**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RACHEL DORRIAN, DEBORAH
YOUNG, and THE ESTATE OF
MIRIAM FOLK, through its
Personal Representatives Rachel
Dorrian and Deborah Young,

    Plaintiffs,

v.                                               Case No. 3:20-cv-878-TJC-LLL

SAFECO INSURANCE COMPANY
OF ILLINOIS,

    Defendant.

## O R D E R

This case comes before the Court for a determination of the respective rights of Plaintiffs, Rachel Dorrian, Deborah Young, and the Estate of Miriam Folk, to uninsured motorist coverage under Folk's auto insurance policy with Defendant Safeco Insurance Company of Illinois ("Policy"). Both parties filed motions for summary judgment as to Count I for Declaratory Judgment. (Docs. 16, 17). The Court received responses in opposition (Docs. 17, 22), and on March 2, 2022, the Court held a hearing on the motions, the record of which is incorporated herein.

## I. BACKGROUND

The material facts are undisputed. On February 10, 2020, Folk died in a car collision when an uninsured motorist struck her vehicle. (Doc. 15 ¶¶ 1–2, 12). At the time of the accident, Folk carried the Policy with Safeco, which covered the vehicle Folk drove and provided Non-Stacked UM coverage. Id. at ¶¶ 5–7, 11. After the accident, Folk's Estate demanded the $250,000.00 of UM coverage provided in the Policy, which Safeco paid. Id. at ¶¶ 14, 16.

Dorrian and Young, the adult daughters of Folk, also demanded the per-person limit of $250,000.00 for their personal damages as survivors of Folk under Florida's Wrongful Death Act, Section 768.21(3). (Docs. 15 ¶¶ 4, 15; 20 ¶ 10).[1] Neither Dorrian nor Young were passengers in the vehicle at the time of the accident, nor have they sustained any bodily injuries caused by the accident; instead, their alleged damages solely arise from their status as Folk's survivors. (Doc. 15 ¶¶ 9–10). Safeco denied UM coverage to Dorrian and Young on the grounds that only Folk sustained a bodily injury covered by the Policy, and therefore, "[l]oss of consortium and wrongful death survivor actions are subject to the per person limit of liability" that Safeco previously tendered to the Estate. (Docs. 15 ¶¶ 15–17; 15-2 at 2).

---

[1] Folk had no surviving spouse at the time of her death. (Doc. 15 ¶ 3).

2

Dorrian, Young, and the Estate initiated this action and now seek a declaratory judgment regarding their respective rights to UM coverage under the Policy.[2] (Doc. 20 ¶ 30–31). Plaintiffs first brought claims for both a declaratory judgment (Count I) and benefits (Count II) (Doc. 1 at 5–6) but have since resolved Count II (Doc. 18 ¶ 3). After the parties filed their cross-motions for summary judgment, Plaintiffs amended their Complaint to include only Count I. (Doc. 20). Because the cross-motions are directed only to Count I, they remain ripe for consideration under the Amended Complaint.

The Policy provides UM coverage for "bodily injury," which it defines as "bodily harm, sickness or disease, including death that results." (Doc. 15-1 at 2, 15). For Non-Stacked UM coverage, the per-person limit of liability is $250,000.00 and the per-accident limit is $500,000.00. Id. at 2. The relevant portions of the UM coverage are:

INSURING AGREEMENT
> A. We will pay damages which an <u>insured</u> is legally entitled to recover from the owner or operator of an <u>uninsured motor vehicle</u> because of <u>bodily injury</u>:
>> 1. Sustained by that <u>insured</u>; and
>> 2. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the <u>uninsured motor vehicle</u>.

---

[2] Plaintiffs do not allege that Safeco incorrectly tendered the policy limits to the Estate. Therefore, only Dorrian's and Young's rights to UM coverage are at issue. (See Doc. 20 ¶¶ 30–31).

3

---

    B. "<u>Insured</u>" as used in this Uninsured Motorists Coverage means:

        1. You or any <u>family member</u>.

        2. Any <u>rated driver</u>.

        3. Any other person <u>occupying your covered auto</u> with your express or implied permission.

        4. Any person entitled to recover damages because of <u>bodily injury</u> to which this coverage applies sustained by a person described in <u>B.1</u>, <u>B.2</u> or <u>B.3</u> above.

---

LIMIT OF LIABILITY

    A.    When the <u>insured</u> is <u>occupying your covered auto</u> at the time of the accident:

        1. The limit of liability for Uninsured Motorists Coverage stated in the Declarations for each person applicable to that <u>your covered auto</u> is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of <u>bodily injury</u> sustained by any one person in that accident; and

        2. Subject to this limit for each person, the limit of liability for Uninsured Motorists Coverage stated in the Declarations for each accident applicable to that <u>your covered auto</u> is our maximum limit of liability for all damages for <u>bodily injury</u> resulting from that accident.

    B.    When the <u>insured</u> is not <u>occupying your covered auto</u> at the time of the accident:

        1. The highest limit of liability for Uninsured Motorists Coverage stated in the Declarations for each person applicable to any of <u>your covered autos</u> is our maximum limit of liability for all damages, including damages for care and loss of services

> (including loss of consortium and wrongful death), arising out of <u>bodily injury</u> sustained by any one person in that accident; and
>
> 2. Subject to this limit for each person, the highest limit of liability for Uninsured Motorists Coverage stated in the Declarations for each accident applicable to any of <u>your covered autos</u> is our maximum limit of liability for all damages for <u>bodily injury</u> resulting from that accident.
>
> This is the most we will pay regardless of the number of:
>
> 1. <u>Insureds</u>;
> 2. Claims made;
> 3. Vehicles or premiums shown in the Declarations; or
> 4. Vehicles involved in the accident.

<u>Id.</u> at 42, 44 (emphasis in original).

To resolve the parties' respective motions for summary judgment, the parties have asked the Court to interpret the Policy and determine (1) whether the Policy provides UM coverage to Dorrian and Young as insureds under the Non-Stacked UM coverage Sections A and B, and if so, (2) whether Dorrian and Young each are entitled to recover the per-person limit of $250,000.00 under the Limit of Liability provision.[3]

---

[3] At the hearing, Plaintiffs conceded that Dorrian's and Young's potential recovery would be limited to $250,000.00 collectively because the Policy confines Safeco's liability to the $500,000.00 per accident limit, half of which Safeco paid to the Estate previously.

## II. DISCUSSION

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Upon review of cross-motions, "the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." T–Mobile South LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).

"The interpretation of insurance policies, like the interpretation of all contracts, is generally a question of law." Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, 143 F. Supp. 3d 1283, 1292 (S.D. Fla. 2015) (citing Lawyers Title Ins. Corp. v. JDC (Am.) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995)). The parties exclusively cite Florida law and do not contest that Florida law governs the interpretation of the Policy.[4] (See Docs. 16, 17). "[T]he Florida Supreme Court has made clear that the language of the policy is the most important factor. Under Florida law, insurance contracts are construed according to their plain meaning." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270,

---

[4] When federal jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332 and when an insurance policy is issued in Florida, both of which are the case here (Doc. 20 ¶ 5), the Court applies the substantive law of Florida. See EmbroidMe.com, Inc. v. Travelers Property Casualty Co. of America, 845 F.3d 1099, 1105 (11th Cir. 2017).

6

1274–75 (11th Cir. 2008) (citations and quotation marks omitted) (quoting Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 537 (Fla. 2005)).

"[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." State Farm Mut. Auto. Ins. Co. v. Mashburn, 15 So. 3d 701, 704 (Fla. 1st DCA 2009) (quoting Auto–Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000)). "In other words, a single policy provision should not be read in isolation and out of context, for the contract is to be construed according to its entire terms, as set forth in the policy and amplified by the policy application, endorsements, or riders." Id.

However, "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous." Taurus Holdings, Inc., 913 So. 2d at 532 (quoting Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003)). "To find in favor of the insured on this basis, however, the policy must actually be ambiguous." Perry v. Owners Ins. Co., No. 8:17-cv-2132, 2019 WL 1936195, at *5 (M.D. Fla. March 8, 2019), report and recommendation adopted, 2019 WL 1936196 (M.D. Fla. Apr. 26, 2019) (quoting Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010)) (emphasis in original). "A provision is not ambiguous simply because it is complex or requires analysis." Id. (quoting Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007)).

7

Additionally, several provisions being construed together to determine the limitations contained in the policy does not render it ambiguous. Hess v. Liberty Mut. Ins. Co., 458 So. 2d 71, 72 (Fla. 3d DCA 1984).

The parties first dispute whether Dorrian and Young are insureds covered under the Policy. Plaintiffs assert that Dorrian and Young are insureds under Section B(4) because each meets the definition of "[a]ny person entitled to recover damages because of bodily injury to which this coverage applies sustained by a person described in B.1, B.2 or B.3 above." (Docs. 15-1 at 42; 16 at 6–7) (emphasis in original). Plaintiffs argue that they satisfy this definition as Folk's survivors under Section 768.21(3) of Florida's Wrongful Death Act. (Doc. 16 at 6–7). In Safeco's cross-motion, it does not refute that Dorrian and Young each satisfy Section B(4), but argues that Section A still requires that Dorrian and Young sustain a bodily injury to be entitled to UM coverage, which they have not. (Doc. 17 at 7). At the hearing, however, Safeco agreed that the Court could assume that Dorrian and Young are covered insureds and only address the second issue.

Thus, assuming arguendo that Dorrian and Young are insureds who were not required to sustain a bodily injury, the Court analyzes whether they are entitled to recover the per-person limit of $250,000.00 under the Limit of Liability provision. Plaintiffs argue that the Policy provides two separate $250,000.00 limits of liability for insureds who occupied the vehicle and for

8

those who did not. (Doc. 16 at 7–9). Because Dorrian and Young are "first party" insureds who did not occupy Folk's vehicle at the time of the accident, Plaintiffs contend that the Policy permits Dorrian and Young to recover per-person limits separate from Folk's Estate. Id. at 6–9.

Plaintiffs misconstrue the Limit of Liability provision and overlook its purpose. As Safeco asserts, the purpose of the occupancy distinction is to identify which vehicle's policy limits apply, not to allow multiple insureds to claim separate policy limits depending on their occupancy status in the covered vehicle. (Doc. 17 at 14). Specifically, under Section A(1), if the injured insured occupied a covered auto during the accident, then the policy limits applicable to that covered auto apply; comparatively, under Section B(1), if the injured insured did not occupy any covered auto during the accident, then the highest per-person limit "applicable to any of your covered autos" applies. (Doc. 15-1 at 44).[5] Here, Folk, the only injured insured, occupied her covered auto at the time of the accident, so the policy limits associated with that covered auto applied.

---

[5] During the hearing, Safeco offered the example of an insured pedestrian who is struck by a motor vehicle. In that scenario, if the pedestrian's policy covered multiple vehicles, the insured could claim the highest policy limits for any of the vehicles. Indeed, "UM coverage follows the person, not the vehicle, so as to afford that person protection notwithstanding the particular circumstances resulting in the injury." State Farm Auto. Ins. Co. v. Lyde, 267 So. 3d 453, 459 (Fla. 2d DCA 2019) (citing Coleman v. Fla. Ins. Guar. Ass'n, 517 So. 2d 686, 689 (Fla. 1988)).

Further, both Sections A(1) and B(1) unambiguously limit Safeco's damages for wrongful death claims to the per-person limit provided to the deceased person. (Doc. 17 at 8). Each section states that the coverage for each person "is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and <u>wrongful death</u>), <u>arising out of bodily injury sustained by any one person</u> in that accident . . . ." (Doc. 15-1 at 44) (emphasis added). Stated differently, the $250,000.00 per-person limit covers bodily injury sustained by one person and all derivative claims—including wrongful death claims—arising from that injury.[6] Multiple Florida courts have interpreted similar UM policy language and reached the same conclusion. <u>See e.g.,</u> <u>Mackoul v. Fidelity & Cas. Co. of N.Y.</u>, 402 So. 2d 1259, 1260 (Fla. 1st DCA 1981) (interpreting limit of liability provision in UM policy and holding that policy limits were not affected by the number of claims that might accrue from the bodily injury of a single person); <u>Florida Ins. Guar. Ass'n v. Cope</u>, 405 So. 2d 292, 294 (Fla. 2d DCA 1981) (holding survivors were subject to the per-person limit of liability for UM coverage); <u>Geico General Ins. Co. v. Arnold</u>, 730 So. 2d 782, 785 (Fla. 3d DCA 1999); <u>Biondino v. Southern Farm Bureau Cas. Ins. Co.</u>, 319 So. 2d 152, 154 (Fla. 2d DCA 1975).

---

[6] Notably, Section B also states: "[t]his is the most we will pay regardless of the number of . . . insureds [or] claims made," which demonstrates the provision's unambiguous limitation of multiple claims to the per-person policy limit. (Doc. 15-1 at 44).

10

Several cases discussed by the parties are instructive. In <u>Geico</u>, the court interpreted a similar limiting clause and held that the per-person policy limit paid to a deceased child's estate included the first-party insured parents' right of recovery for their own pain and suffering. 730 So. 2d at 783, 785. The court rejected the parents' argument that the per-person limit did not apply because they had a separate right to recover under Florida's Wrongful Death Act. <u>Id.</u> at 784. Similarly, in <u>Biondino</u>, a wife sought damages for loss of consortium due to injuries sustained by her husband in a car accident. 319 So. 2d at 153. Both the wife and husband were insured under the UM policy; however, the court interpreted the policy's limiting clause as capping the insurer's liability to the per-person limit, regardless of the wife's status as an insured. <u>Id.</u> at 154.

Plaintiffs contest the application of <u>Geico</u>, <u>Biondino</u>, and other cases, because the courts did not interpret identical policy language. (Doc. 22 at 3–4).[7] Although <u>Geico</u> and <u>Biondino</u> do not involve identical policies, they do involve first-party insured claims for similar UM coverage and reflect Florida law in limiting wrongful death claims to the policy limit provided to the injured insured. Indeed, "Florida courts have uniformly held that loss of consortium and wrongful death survivor actions are subject to the per-person limit of liability,"

---

[7] Plaintiffs do not cite any case law supporting their interpretation, nor has the Court located any cases in its own research.

11

and the same is true here. <u>Allstate Ins. Co. v. Clohessy</u>, 32 F. Supp. 2d 1333, 1337 (M.D. Fla. 1998).

Therefore, this Court finds that by the unambiguous terms of the Policy, Dorrian and Young are not entitled to UM coverage because the Policy limits Safeco's total UM coverage liability for Folk's death to the $250,000.00 per-person limit previously tendered to the Estate.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiffs' Motion for Summary Judgment (Doc. 16) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Doc. 17) is **GRANTED**.

3. As to Count I of the Amended Complaint for Declaratory Judgment (Doc. 20), the Court hereby declares that Plaintiffs Rachel Dorrian and Deborah Young are not entitled to UM coverage under Miriam Folk's auto insurance policy no. F2780567 with Safeco. Declaratory Judgment to that effect will be entered by separate order in favor of Defendant Safeco Insurance Company of Illinois against Plaintiffs, Rachel Dorrian, Deborah Young, and the Estate of Miriam Folk.

4. Following the entry of judgment, the Clerk shall terminate any pending motions and deadlines and close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 4th day of March, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

km
Copies:

Counsel of record